**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **RODNEY SLYVESTER WIGGINS** | * | **CRIMINAL NO. 26-00017-TDC** |
| | * | |
| | * | |
| | * | |
| | * | |
| | ******* | |

**RODNEY WIGGINS MOTION TO SUPPRESS EVIDENCE**

Comes now, Rodney Wiggins, through undersigned counsel, and moves the Court to suppress the firearm obtained through an unlawful stop and subsequent search in violation of the Fourth Amendment.  Mr. Wiggins further moves for suppression of any evidence associated with cellular telephones that were seized and held without probable cause in violation of the 4th Amendment.  In support of his Motion, Mr. Wiggins states as follows:

### I.      Background

On the evening of January 28, 2025, Mr. Wiggins and his girlfriend were parked in a rental car in a commercial shopping center in Laurel, Maryland.  Laurel City Police were called by the car's owner.  The police approached the car and immediately requested the licenses of both occupants.  The responding officers then told Mr. Wiggins that there were warrants for his arrest and on that basis, ordered Mr. Wiggins out of the car.  Mr. Wiggins was arrested and the police recovered the charged firearm from the vehicle.  One of the arresting officers ordered Mr.

Wiggins' fiancée to identify and provide Mr. Wiggins' cellular phones. The government produced the forensic extractions of the two unlawfully seized phones in discovery.

Mr. Wiggins was initially charged with possession of the recovered firearm in Prince George's County District Court. Several months later, in May 2025, Mr. Wiggins was charged with separate offenses alleged to have occurred in Howard County. Prince George's County entered a nolle prosequi on June 30, 2025. Mr. Wiggins is detained at the Howard County Detention Center in primary state custody.

On January 15, 2026, a grand jury returned the federal indictment, charging him with felon in possession of a firearm and alleging that he has three prior qualifying convictions subjecting him to the 15-year mandatory minimum. Mr. Wiggins is also pending a violation of supervised release hearing in 13-cr-00146-GLR . Undersigned counsel was appointed to represent Mr. Wiggins in both matters on April 8, 2026. The Court set a motions hearing date for October 20, 2026.

## II.    The Laurel City Police's seizure of Mr. Wiggins was not supported by reasonable articulable suspicion.

On January 28, 2025, the Laurel City Police received a call for service from the owner of a Red Dodge Challenger who used the Turo app to allow renters to rent his vehicle. The owner claimed that the Dodge Challenger was not timely returned by the renter and that he had tracked it to a location in Laurel. The Laurel City Police responded initially by sending two marked cars to the scene. The uniformed officers who responded were wearing body worn cameras.[1]

---

[1] The relevant Body Worn Camera videos are submitted as **Exhibits 1, 2, 3 and 4**.

The officer in the first vehicle approached the passenger side of the parked Dodge Challenger, where Mr. Wiggins' fiancée was seated.  The second officer arrived within a minute and parked directly in front of, and perpendicular to, the Dodge Challenger and approached the driver's side.  The first officer explained that he was approaching the vehicle because the vehicle had not been returned to a rental car company.  He immediately asked for both the driver's and passenger's identifications.  The identifications were retained throughout the detention.

The Supreme Court affirmed, that a "seizure" occurs when officers employ " 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 592 U.S. 306, 311, 141 S. Ct. 989, 995, 209 L.Ed.2d 190 (2021) (alteration in original) (*quoting Terry v. Ohio,* 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).  To determine whether officers effectuated detention through show of authority, the Court applies the objective test established in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion).  Under Mendenhall, a show of authority occurs if the totality of the circumstances demonstrates that a reasonable person, measured objectively from an innocent citizen's perspective, "would have believed that he was not free to leave." 446 U.S. at 554, 100 S.Ct. 1870; *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382.

The Fourth Circuit in *United States v. Cloud*, 994 F.3d 233 (4th Cir 2021), summarized the factors relevant to the objective totality of the circumstances analysis of whether a reasonable person would feel free to leave or terminate the police encounter:

> Our cases have enumerated six broad, non-exclusive categories of facts that may be   relevant: (1) how many officers were present; (2) whether officers were in uniform and/or displayed firearms; (3) whether any officer touched the defendant or made any attempt

3

to block or restrain his movement; (4) if the officer's questioning
was " 'conversational' rather than 'intimidating' "; (5) whether the
officer informed the defendant that he suspected him of illegal
activity, or treated the encounter as "routine"; and (6) if the officer
asked for identification, how quickly the officer returned it to the
defendant. *United States v. Gray*, 883 F.2d 320, 322–23 (4th Cir.
1989); *see also, e.g.*, *Jones*, 678 F.3d at 299–300.

Applying these factors, the police seized Mr. Wiggins at the initial encounter. There were two officers present, with several additional officers arriving after his identification was taken. All officers were in uniform, carrying their holstered service weapons and belts. The second officer on the scene parked directly in front of the Dodge Challenger and the officers stood immediately at cars' front doors, shining their lights into the vehicle. The encounter was not treated as routine as it was in direct response to a call for service. After the initial officers arrived at least two other marked cars pulled in within minutes. The officers immediately took Mr. Wiggins' identification and did not return it.

The Laurel City Police lacked a reasonable articulable suspicion of *criminal activity* to justify Mr. Wiggins' detention. *See United States v. Williams*, 808 F.3d 238, 244 (4th Cir. 2015). The police received a call for service from an individual claiming that the renter of the Dodge Challenger had exceeded the rental period. Generally, this is civil matter which requires the owner to file a complaint in the appropriate District Court, as the dispatcher explained to him.

After taking Mr. Wiggins identification, the officers told him that there were two outstanding arrest warrants, one from Baltimore City for a domestic case, and a second federal warrant for robbery. Mr. Wiggins probation officer had filed a petition alleging that he violated the conditions of his supervised release based, in part, on the Baltimore City case on January 13,

2025.  The warrant was not for robbery as asserted by Laurel City Police, but for a federal supervised release violation.

Once Mr. Wiggins was arrested, officers recovered the charged firearm under the driver's seat of the vehicle.  Mr. Wiggins was placed in a police car, while the police permitted his fiancée to collect their possessions from the vehicle.  The supervising officer on the scene directed his fiancée to give her Mr. Wiggins' phones.  She asked whether she could retrieve an item from one of the phones.  As she unlocked the screen, the officer attempted to snatch the phone from her hand.  The supervising officer seized two phones-a Samsung and a Samsung Galaxy S9+.  She can be seen on the body worn camera attempting to manipulate one of the phones.  Mr. Wiggins' fiancée expresses concerns that the officer is attempting to search the phones.  The supervising officer turns the phones over to a different officer for their transport to the station.  The following morning the phones are handed over to the Laurel City Police.[2]

### III.    The Laurel City Police lacked probable cause to seize Mr. Wiggins' cellular telephones.

The Laurel Police lacked probable cause to seize Mr. Wiggins' two cell phones without a warrant.  As outlined above, Mr. Wiggins was not under investigation for firearms-related activity, and he came to the attention of the police based on a call for service.  There was no evidence during the encounter connecting the recovered firearm to any phone.  The phones were taken from Mr. Wiggins' fiancée; they were not recovered in proximity to the firearm or any other contraband.  At the time of arrest, the police failed to establish probable cause to seize the phones and waited more than a month to obtain a search warrant.

---

[2] The Laurel City Police property receipt for the phones is attached at **Exhibit 5**.

To rely on the exigent circumstances exception to the warrant requirement, the government must demonstrate both probable cause and exigency justifying the warrantless seizure. *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In determining whether exigent circumstances justify a warrantless seizure, the Court must consider whether: "(1) the police had probable cause to believe that the item seized contained contraband or evidence of a crime; (2) the police had 'good reason to fear' that, absent such seizure, the defendant would destroy material evidence before the officers could obtain a warrant; and (3) the police 'made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy.'" *United States v. Burton,* 756 Fed.Appx. 295 (4th Cir. 2018 unpub.) *quoting Illinois v. McArthur*, 531 U.S. 326, 331-33, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001); *see also United States v. Cephas*, 254 F.3d 488, 495 (4th Cir. 2001) (explaining exigent circumstances justifying a warrantless entry into a home).

Here, the Laurel Police lacked probable cause beyond their generalized suspicion that an individual who illegally possesses a firearm may have information regarding firearms on their phone. Laurel police seized the phones and held them from January 28, 2025, until a warrant was obtained on March 5, 2025. As outlined below, this lengthy delay was unreasonable, particularly considering the state prosecutor's decision declining to pursue a warrant based on an absence of probable cause.

**IV.    The Laurel City Police violated the Fourth Amendment when they refused to return Mr. Wiggins' cellular telephones and unlawfully held the phones until a warrant was obtained 35 days after his arrest.**

A seizure that is "lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." *United States v.*

*Jacobsen*, 466 U.S. 109, 124, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (*citing United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). To determine if an extended seizure violates the Fourth Amendment, the Court must balance the government's interest in the seizure against the individual's possessory interest in the object seized. *See Place*, 462 U.S. at 703, 103 S.Ct. 2637; *United States v. Van Leeuwen*, 397 U.S. 249, 252–53, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970).

In *Pratt,* the Fourth Circuit found that a 31-day delay in obtaining a warrant, after the FBI had seized a cellular telephone was unreasonable.  The Court's reasonableness analysis considered the lack of diligence and the FBI's failure to provide any justification for the delay. 915 F.3d 266, 272.  The Fourth Circuit also considered the 11th Circuit's decision in *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) finding that 21-days to secure a warrant for the defendant's computer based on the agent's travel unreasonable.  *Id.*  After *Mitchell,* the 11th Circuit held delays of 45 and 25 days to be reasonable based on the diligence and justification presented by law enforcement and consideration of the defendants possessory interests.  *United States v. Vallimont*, 378 Fed.Appx 972, 975-976 (11th Cir 2010); and *United States v. Laist*, 702 F.3d 605, 616-617 (11th Cir. 2012 )*; but cf. United States v. Sykes*, 65 F.4th 867 (6th Cir. 2023) (finding a 45-day delay reasonable in the case of a detained defendant).

Here, law enforcement was unable to obtain a warrant.  After seizing the phones, the supervising Laurel police officer contacted an Assistant State's Attorney (ASA) for Prince George's County to obtain a warrant to search the phones.  The ASA informed the supervising officer that the police **did not have probable cause to search the phones,** consequently the

prosecutor declined to pursue a warrant. As of February 3, 2025, the Laurel Police noted that the phones were "releasable" to Mr. Wiggins.

Mr. Wiggins was detained and unable to take possession of his phones. At the time of his arrest, he told Laurel police officers that his property should be returned to his fiancée, and she made efforts to obtain his phones. Despite those efforts, the police maintained the phones until March 3, 2025, when Magistrate Judge Simms signed a warrant to search the phones based on an affidavit prepared by ATF SA Monaco. The affidavit provided by ATF provided additional details and investigation that was conducted during the time that the phones were retained by Laurel Police. On March 3, 2025, Agent Monaco took custody of the phones and arranged for their analysis.

Mr. Wiggins did not consent to the seizure of his phones and made efforts to have them released. The police did not have probable cause when they seized the phones, as confirmed by the Prince George's County prosecutor. The delay in seeking the federal warrant was not reasonable-it was not based on diligent efforts or overwhelmed police officers. It was based on the police's determination to hold the phones until they could be accessed-which required additional investigation and coordination with other jurisdictions.

## V.     Conclusion

Mr. Wiggins respectfully requests that the Court suppress the firearm recovered from the vehicle and any evidence obtained from the illegal seizure of the two cellular telephones.

Respectfully submitted,

8

_____/s/_____

AMY FITZGIBBONS, #97952
Assistant Federal Public Defender
Federal Public Defender's Office
6411 Ivy Lane, Suite 710
Greenbelt, Maryland  20770-1405
(301) 344-0600
Fax No. (301) 344-0019
amy_fitzgibbons@fd.org